Next case called for oral argument, the Simpkins v. HSHS Medical Group. Counsel, whenever you're ready, may proceed. Your Honor, can I please report? I'm Rod Schmieder, and I have the pleasure of representing Judy and Bob Simpkins in this matter. The trial court occurred in dismissing the allegations against the original defendant, St. Elizabeth's Hospital, for the negligence of its ICU nurse on limitations grounds. Therefore, we ask that you reverse the judgment of the trial court and remand this matter for further proceedings. This lawsuit was filed originally against Dr. Poulos, HSHS Medical Group, St. Elizabeth's Hospital, and a couple of respondents in Discovery. We proceeded to take some depositions. As the case proceeded, it became clear, especially at the deposition of Dr. Poulos in March of 2014, that he testified that the ICU nurses had not notified him until the early morning hours of May 14, 2011, about Judy's deteriorating condition. Now, the records show that on May 13, that they noted that Dr. Poulos was aware of her complaints of numb to the left foot and other sensations that she was having. At that moment in time, I immediately requested the depositions of all the ICU nurses on Judy between May 13 and May 14 until her emergency vascular surgery. I told defense counsel exactly the purpose of those depositions, which was to see whether St. Elizabeth's had any issues. And we ultimately did get that deposition, although it was delayed by a number of scheduling conflicts and other things. We filed an amended complaint where we asserted that the ICU nurse was negligent, and there was no objection to the amended complaint. We entered a scheduling order, and then they filed a motion to dismiss, which was then granted. Now, this court, as it knows, reviews this case de novo as a Section 2619 dismissal. And as a statute of limitations is an affirmative defense, the defendant bears the burden of proof. And I'd like to point out a few things for the court. Let me ask you this. I have down that you first requested the deposition of Dr. Poulos on October 3, 2013, and it wasn't taken until March 28, 2014. That's five months after the first request. Correct. Was that your delay or their delay? That was... Or joint delay. No. I can't, I don't know that I can put it on one person, but based upon the doctor's schedule and the trial schedule of the attorneys and all that stuff, that was the earliest that we could accomplish Dr. Poulos' deposition. And the interrogatories that you sent asked for all of the names of the individuals who took care of your client, correct? Correct. And those were sent out July, or those were responded to, I think, on July 9, 2013. Correct. Where they said, look at the medical records labeled 1-5792. Correct. Did you see the objections in those interrogatories? Answers? I did. Did you see the objections? I... Do you think it's appropriate under the rules, Mr. Schmieder, to refer somebody to medical records when your interrogatory asks for names and addresses? I don't think it's appropriate, but I know it tends to be the practice. I mean, under 213... Well, let's talk about Supreme Court rules, not practice. Rule 213E, I believe, is the section that says you may answer questions by referring to documents. Sure. But you asked for names and addresses. Were the addresses in the medical records? They were not. Did you ever call up the objections? I did not because I was told that I would be provided with dates for these nurses. And how long? It took you, I think, three depo notices because the other two were canceled? It did. And it is... And I will say this. So by the time you got the depos, it was after the statute ran, according to them. Well, according to them. Or close to it. According to them. According to the statute. Well, and that actually brings me right to my first point, which is, as a section limitations is a permanent offense and they bear the burden of truth, there is absolutely no evidence in the record that before May 5th, 2013, two years prior to the amended complaint being filed, that Judy Hopps' symptoms were on notice that the ICU nurses committed any negligence whatsoever. There's just absolutely no evidence of it. They bore that burden of proof. What date are you using, or is the defendant using? Are they using the date she was in the ICU? I don't know. In the trial court below, they were using the date that the original complaint was filed. No. The date of the malpractice is what, according to them? The date that she was cared for in the ICU? That's the date, yes. The May 13th, 14th? May, correct. Why not the date she left St. Elizabeth's Hospital? Thank you. They can argue whatever they want. I can go to a malpractice lawyer. They can argue whatever they want. Isn't that your point, though? That is my point. But to back that up, again, where is the evidence? As we know, statute limitations are factual questions. They're for the prior fact. Where is the evidence that two years before this amended allegation was filed, that before May 5th, May 5th, 2013, where is the evidence that Judy and Bob knew that the ICU nurses committed negligence? Well, it's also could have known. It is could have known, right? And isn't there argument that you had the records? Right. And there's a recent Supreme Court case that, in preparing for this oral argument, I ran across. Moon v. Rowe, R-H-O-D-E. This has not been provided yet? It has not been provided. Moon v. Rowe, it was a Supreme Court decision. I believe that the petition for re-hearing was denied late last year. What's the citation? If you would supplement the record, please. In this court, with that case and counsel, you have whatever, 10, 14 days, whatever, to reply. Absolutely. The citation is 2016, Illinois, 119572. In the case, the issue that the Supreme Court was addressing was whether the discovery rule for medical malpractice, lawful death, and survival actions applied in the statute. And they answered that question. But further down in the opinion, they then went on to reverse the dismissal on statute of limitations ground. And they specifically noted, when this argument was made, they said, well, wait. The son of the deceased happened to be an attorney who had medical malpractice experience. And the Supreme Court said, we reject that notion that just because that attorney had medical malpractice experience, that somehow they should have known of this additional party that could have been sued earlier. Second, the request of records or even the possession of records, that argument was raised as well. And they said, we reject that as well. And by the way, these are all factual issues that should be tried by the trier of facts. That's what happened. And in that case, what happened was they sued two doctors in 2011. Two years later, their expert reviewed the 2009 CT scans and found that Dr. Rowe had missed some fluid, signifying, I believe, an epidural abscess. And so they filed that new lawsuit. And the argument, of course, was, well, you had that CT scan. The Supreme Court said, well, no. Those are issues of trier of fact. When they should have known. That also conformed with what happens in court. And I think this case is even simpler because this isn't a separate statute running, even though I believe that we filed well within the statute and the statute running. But it relates back. The original allegations target the May 13th revision surgery and bookend it with the May 14th emergency vascular surgery. So they knew that the occurrence in our original complaint dealt with that time in the ICU. Now, to pretend otherwise is somewhat comical, especially when you answer a discovery by saying, here's all the records. When I ask the question, give me all the people, give me all the records, give me all the evidence that relates to what was alleged in the original complaint, they said, here, look at the ICU records. Well, so they knew. They knew just from the allegations. I don't think they say, look at the ICU records. They say, look at what records one through five, seven, whatever, 5,700 pages. Which includes the ICU records. It includes x-rays, too, and MRIs, and everything else. It includes a lot of things. But if the answer is, give me the records that relate to the allegations in the complaint, and they give me all of those, they can't now say, well, wait a second, this is a new transaction. They recognize in their answer that this was a transaction or occurrence that encompassed the ICU. And so, of course, these allegations then grow out of that occurrence. And that's all that's required. A new claim will relate back if the events alleged were close in time and subject matter and led to the same injury. And there's no dispute here that this led to the emergency vascular surgery to resolve the saddle aneurysm that she had in her aorta. And that resulted in ischemia, and that led to the loss of her sensory nerves in her legs. Did you claim in your complaint that there were any different injuries attributable to the nurse's conduct? Absolutely not. Everything was the same? 100%. So, really, you have the doctor pointing at the nurses and the nurses pointing at the doctor for the same exact period of time? Correct. Once the nurse was deposed, she didn't do much pointing. What do you mean? She confessed that the nurses know, say, Dr. Coles is aware, but she confessed that any time there was a change in condition that she should have notified Dr. Coles, she admitted that she didn't do it later on as the evening progressed. But it was the same period of time that led to the emergency surgery? Absolutely. Absolutely. And this case is very similar. It's almost eerily similar to Porter v. Decatur Memorial Hospital, another Supreme Court opinion from 2008 that described this. There, they had sued a Dr. Dole, who was the emergency room physician. They added Decatur Memorial Hospital's respondent to discovery. They then amended the complaint to add Decatur Memorial Hospital's defendant. A year after that, their expert was being deposed, who said there were two very evident fractures on the CT scan, again, medical records from years earlier. And based upon that, they filed a second amended complaint six months later adding allegations that the hospital's respondent was Dr. Cross, the radiologist, who missed those very evident fractures on the CT. And this is what the Supreme Court said. The two allegations were part of the same events leading up to the same ultimate injury for which damages are solved. They were closely connected in both time and location. They were also similar in character and general subject matter as they involved allegations of medical malpractice that resulted in failure to appreciate plaintiff's diminishing neurological status. Now, this case from the very beginning was about a delay. And you had a plate that came dislodged off of Judy's spine. It was hidden and rubbing up against her aorta. And it was about the delay in that, the delay in care that resulted in the emergency vascular surgery that was on May 14th. This is Porter. This clearly relates back. On top of that, as Porter points out, the court can also look to the entire record. So when you look at not only the original complaint, you look at the written discovery that encompassed the May 13th and 14th time period, you look at their discovering answers, which they say, while they say a universe of records, they say these records are all related to the allegations in the complaint. That's an admission. The depositions of Judy Simpkins, Bob Simpkins, Dr. Kulos, all involved. Dr. Crouch, I'm sorry, I forgot about Dr. Crouch. He was the respondent in discovery. We took his deposition. That was some of the delay in getting Dr. Kulos' depositions. We took Dr. Crouch's depositions. We were getting discovery from Medtronic. So there were other things that were happening. But all of those depositions covered this time period in the ICU. And, again, it wasn't when Dr. Kulos said no. I wasn't told when there was a change. That's when the depositions were requested. And, by the way, it's uncontroversial. I mean, I put in two affidavits, and when I was talking to opposing counsel, it was clear. I need these. I need to see if you, your client, has more problems than just being vicariously responsible for Dr. Kulos. So even under that test, when you look, it's uncontroversial. You can stop right there and say, Rob told them, they brought their attention to those facts that there was going to be this possible claim out there. That satisfies the relation back doctrine. I think the relation back doctrine is satisfied, according to Porter, if there is a sufficiently close relationship. That's the test that came out of Porter, right? Correct. That is the test. They adopted that, yes. Right. And you're telling them, quote unquote, I'm not sure how that helps or hurts. Well, here's why. Because the sufficiently close test, the court in Porter then also went on to say, a court should consider the entire record, including depositions and exhibits, to determine whether the defendant had such notice. The question is, was there prejudice? Was there notice to allow the defendant to prepare its defense? And I can assure you that there absolutely was, because I notified them they had ample time, because of all the delays to prepare the nurses for their depositions. There was no surprise. As a matter of fact, you can look on the appendix page 99, which is pages 42 and 43 of Nurse Kovatch's deposition, and there's an exchange between Cheyenne Brock-Martin, who represents St. Elizabeth's, and me. It was abundantly clear what records were at issue. I had forgotten the five pages earlier that she wanted me to make sure her witness had, so we took a break. She supplied it to me. I marked it as an exhibit. There was no surprise what we were going to be talking about or anything. Their attention was directed to this general facts situation, and they knew that this was going to be an issue in the case, so there just simply was no surprise. Now, unless the court has any other questions, I believe we satisfy both the relation back doctrine. I believe that under the discovery rule, the statute of limitations didn't start to approve until March 28th of 2014 after Dr. Poulos' deposition, and either way there's certainly no evidence to support the trial court's finding that somehow two years had elapsed prior because there was no evidence that they knew beforehand. And the Moon v. Road, I think, opinion rejects those other issues. And then there was a statute of repose argument that they didn't respond. I think we all had our agreement that the second or the amendment complaint was filed well within the four years. So the Moon v. Road case, which I would hope that there's a response to, are you telling me that that case says that the number of pages don't count because they've argued Heredia v. O'Brien where the court said there were 15,000-plus pages of records and so you should have known. So is Road going to step on that case from the First District? Absolutely. Okay. They won't say the number of pages don't matter. I understand. Okay. As far as medical records being available to the defendant, as set forth in the O'Brien case that was argued, do you think Moon v. Road will step on that case? Absolutely, and I want to be very clear about what they're stepping on. They're stepping on the fact that that is not dispositive in and of itself. Okay. What they're saying is it's a question of fact that can be further developed and put before a jury and let them decide, but that in and of itself is not sufficient. And I can actually tell you it's in paragraphs 51 and 52 of that opinion where they say that. But the reason I ran across Moon v. Road was because it was citing the need versus Engle and the Arntz v. Resurrection Hospital cases that I had cited for the proposition that, no, the statute doesn't begin when you file your original lawsuit. You can learn things in discovery and that can start a new statute of limitations, and the Supreme Court cited those cases with approval, saying, yeah, there's 38 years of history here. Of course we can do that. Thank you. Thank you, Counsel. Counsel? Thank you. Justices, may it please the Court, my name is Jason Corley on behalf of St. Elizabeth's Hospital. The subject of this appeal is Plaintiff's attempt to recast his initial claim, alleging that a surgeon was negligent in failing to recommend emergency surgery as a new claim against the nursing staff of the Administration of Post-Surgical Care. Plaintiff's new claim concerns different individuals, different aides of treatment, different subject matter, and an entirely new basis of liability with respect to St. Elizabeth's Hospital. Because Plaintiff's claim was filed in contravention of the statute of limitations and did not relate back to Plaintiff's initial complaint, we're asking that this Court affirm the order of Judge Loveno dismissing that new claim with prejudice. When do you think the four-year statute ran? Your Honor, I believe that the statute of repose began to run during the ICU care. I think that that's what is required under an application of a statute of repose. Why? Because the statute of repose would begin running... Why that date? That date, Judge, because that's when the treatment that Plaintiff now has placed at issue occurred. So the statute of repose would run on that date. I do want to make clear to the Court that our position with respect to the operation of the statute of limitations is that the latest date that it could begin running for Plaintiffs was the date they filed their initial complaint. And we take that position because that's the date that Plaintiffs filed their complaint, which demonstrated, of course, that they believed that they had an injury that was wrongfully caused. So for purposes of statute of repose, you would say that it's the date they filed their complaint? Oh, no. No, Your Honor. I'm sorry. For the statute of limitations. So the two-year statute. Correct, Your Honor. So when you directed the defendants to the entire set of medical records, why wouldn't it be the date she left the hospital? Well, Judge, I think that my opinion is... You didn't narrow. When they asked you for the names of the ICU personnel, you didn't narrow the scope of their inquiry. Well, I do have a quotation to their actual interrogatory requests. Well, their interrogatories followed the Illinois Supreme Court interrogatories. Understood. Did you understand that? Yes, Your Honor. And did you see those were interrogatories that were approved by the Illinois Supreme Court? Yes, Your Honor. And did you object to every interrogatory that was posed? I do not know the extent, Your Honor. Well, you did. I apologize. So my question is, how is it that you object to every interrogatory that's approved by the Supreme Court? Your Honor, I cannot provide you with an answer to that question today. Our understanding in reviewing that was that... Go ahead. I'm sorry. Was that the objections were appropriately made? Overly broad when you asked for the names of nurses? Fergenson? Your Honor, when plaintiff provides us with interrogatories, certain interrogatories that address the treatment that's alleged in the complaint, but also the damages alleged in the complaint and the injuries resulting therefrom, we do want to make an effort to provide plaintiff with full and open discovery. So we responded with medical records. Your full and open discovery was C medical records that had not yet even been produced. I don't understand that. I don't understand how – and here's my question, really. Do you think that a defendant's delay should be considered by the court in determining whether the factual basis for the statute of repose is run? Well, no, Your Honor. You don't think so? Well, no. Okay. But moreover, I think that there was no delay here on the part of St. Elizabeth's Hospital that resulted in any sort of prejudice to plaintiff. Well, the plaintiff initially issued Supreme Court rule interrogatories asking for the names of the people who took care of the client, and they asked for the names and addresses, who they worked for, et cetera. You objected, and then without waiving your objection, C medical records 1 through 5-7, whatever, 5,700 pages-plus of medical records. That does not answer the Supreme Court rule interrogatories. That does not have the name or the address, the information that's in B, C, D, E. And so how is it that the plaintiff is supposed to know is what I'm getting to? When do you do that? Your Honor, for one thing, prior to the plaintiff filing a lawsuit, they have to have a medical records review by a reviewed professional who prepares a certificate of merit. I'm aware of that. Answer my question, though. So, Judge, from the beginning, a physician is going to review the medical records, and that physician makes a determination as to whether or not the plaintiff has an actual complaint. But what you're telling me is that the physician can rely on the medical records, which they did here. So it wasn't until they took the deposition of the treating doctor who said, hey, that medical record is wrong. I wasn't aware. No. So they had the right to rely on that record, is what you're saying. Your Honor, that's where plaintiffs and St. Louis Hospital have a significant difference of opinion. And plaintiff's position is not borne out in the record. The portions of the deposition that the plaintiff is citing to the deposition of Dr. Poulos is very brief. And all that was asked in the course of that deposition with respect to the nurses was a question of, well, when were you made aware? And he looked at the records and said, well, it looks like I was made aware at this time. That's it. When was the first time that you told plaintiffs the actual names of the two nurses that took care of his client? When was the date that you actually provided the names of those two nurses that they tried to depose? Well, I know, Your Honor, that plaintiffs issued a notice for a deposition early in 2014. So they should have known at that point in time. And then they tried to take the deposition, and it took them three notices to get the depositions because St. Louis was canceled. Right. The deposition was canceled. That was due to scheduling conflicts. But the record here also provides an answer to your question. And that's that the inability of a plaintiff to take those depositions did not operate to limit his ability to assert a claim. When a plaintiff filed his amended complaint or his allegedly new claim against the nursing staff, he had attached to that a new certificate of merit from the registered nurse. And that nurse asserted that she had reviewed the entire body of medical records and that it was her opinion that there was a merit for his claim against the nursing staff. Importantly, the dates — Did she have the deposition of Dr. Pelosi? Pelosi? I don't believe that in her certificate of merit, she refers to the deposition of Dr. Pelosi. She refers to reviewing the medical records of St. Louis Hospital, the same records that were submitted to the initial reviewing physician before he served them with the initial certificate of merit. Did you look at the certificate of merit that was attached to plaintiff's complaint? The initial complaint, Judge? Yes. I did. Did you look at the last line of his certificate of merit? I only have a portion of it. Did the last line of his certificate of merit suggest that personnel were involved? Or you don't know? Your Honor, I do not know. Can we examine the entire record when we look at the relation back test, including the affidavit and certificate of merit of their physician? Your Honor, the entire record can be considered, but there still has to be sufficient notice of the underlying claim that's going to be asserted against the new defendant. So the hospital was a part of this the whole way through, right? It's not like the hospital was added late. The hospital was added in the original complaint? That's correct. Okay, so was the hospital on notice that the damages or the emergency surgery or the negligence, if you want to say, occurred in the ICU from the first complaint? Was the hospital on notice that the alleged negligence occurred in the ICU? No, the hospital was not aware that any alleged negligence occurred in the ICU. The focus of the initial complaint is just on the issue of whether or not Dr. Poulos should have recommended emergency surgery. Where was the patient when that occurred? This is over the course of a few months leading up to the revision surgery. Where was the patient when the allegations of negligence occurred about the emergency surgery versus the elective surgery? Well, I believe that it happened over the course of time in Dr. Poulos' office. She didn't have a plate in her when she was in Dr. Poulos' office, did she? Well, that's why it's important to refer back to plaintiff's initial complaint. Okay, please answer my question. The allegations in the complaint over which St. Elizabeth's Hospital is a named party allege what dates of negligence that the doctor should have performed emergency surgery? The operative dates of negligence for when he should have performed negligent surgery are that he should have recommended emergency surgery prior to the date that plaintiffs now allege that the nursing staff was negligent. What date was that, sir? What date was that? What dates are we talking about? There are only two dates. Your Honor, there are not two dates, and that's what's so important about plaintiff's initial complaint. He starts by alleging that the medtronic plate was implanted in January of 2011. He then alleges that in April of 2011, x-rays revealed that the medtronic plate had become detached. So we're now between January and April. Plaintiff next alleges that subsequent CT scans revealed that the aorta was tended over the plate. What's the date of that CT scan? I believe it's simply alleged as subsequent. But you know the date. I'm sorry? St. Elizabeth's knows the date just by reading the complaint. You've got the records. You are correct, Your Honor. But my point is that this all took place well before the ICU care. So the conduct placed at issue initially is over a period of months leading up to the ICU care. And the sole question at that time was whether or not that procedure, that plate removal, should have been performed emergently or whether it should have been performed on an elective basis. Thank you. Now you've answered the question. Now let's focus in on that. That sole issue you just mentioned, what were the dates of that? The sole issue? Well, the sole issue is that it was alleged. What were the dates of the surgery, sir? The surgery was performed on May 13th. But the allegation, the initial allegation, was not that that surgery was performed in a negligent manner. It was that it should have been performed earlier. So in reviewing the initial complaint and the certificate of merit, the only notice to the parties was that plaintiff was making a claim that that procedure should have been performed on an earlier date. And that's important. I think you should look at page 2 of the certificate, or the doctor's report, or the end lines of the doctor's report. But my question is really notice to the hospital. That's what we're talking about that you're answering my question, sir. Correct. Because whether the hospital is surprised is going to be a very big issue for you, right? You're correct, Your Honor. And I can assure you the hospital was surprised. We did not receive notice of this, of the new complaint. So you never interviewed. You're going to stand here before us and tell us that when this complaint came out and you knew that the allegations were emergent versus elective surgery, and this lady's in the ICU, that you all never talked to an ICU nurse about this. You never investigated that. Is that what you're going to stand here and tell us? Your Honor, this case. Is that true or not true? Yes, Your Honor. I never even heard it. You never investigated. St. Louis has never thought. It's wild as street. This would be a St. Louis. This would be an ICU nurse. The hospital did not believe that this would be an ICU nursing case. And the reason is because what was alleged in the initial complaint. And I do want to address also the specific agency arguments that were made against the hospital. Plaintiff brought up Porter, and I need to distinguish that case because there are a number of fundamental differences with that case. But getting back to your point, Your Honor, in the initial complaint, plaintiff only alleged that Dr. Poulos was an agent of the hospital. There was no allegation that personnel, staff, nurses were agents of the hospital or employees of the hospital and that their conduct was placed at issue. That is a fundamental difference between this case and Porter. Well, can I ask you then, then obviously the hospital interviewed Dr. Poulos and he advised them as to when he was alerted to the problem with this patient, right? Your Honor, Dr. Poulos was represented by separate counsel. The medical group was also a defendant in that case. And so no, you did not have to answer the question. No, that did not happen here. And to make it clear, the way that allegation played out in this case was really a claim of apparent agency to the hospital approach in this case as to whether or not Dr. Poulos was an apparent agent. And I do think it's important to know. But as the hospital, as an apparent agent case, wouldn't the hospital also be privy to what the circumstances were surrounding the emergent issue? Well, the hospital would be in possession of the medical records. Dr. Poulos was proceeding as a distinct, separate defendant from the hospital. So the hospital was limited in what access it would have to the physician. But I do want to note that the court, with respect to that apparent agency claim, the hospital filed a motion for summary judgment with respect to the agency claim. And plaintiffs did not contest that motion. That motion for summary judgment was granted. And so what we're talking about here really is plaintiffs' argument that their new claim relates back to an initial claim that did not have merit in the first place. It was a claim. The summary judgment had to be granted with respect to it. But the hospital, though, still was a defendant, correct? At that stage, Your Honor, that terminated our involvement in the case. So the hospital was no longer a defendant when the nurses were brought in? The new claim was added. We filed a motion to dismiss. That motion to dismiss was granted. It dismissed the new claims against the nursing staff. And subsequently, so the apparent agency claim remained at that time. And then we filed a motion for summary judgment with respect to the apparent agency claim. Wait. So when the new nurse was brought in, the apparent agency claim was still extinct, correct? Correct, yes. Because we started with the apparent agency claim. Then the new claim was added. We filed a motion to dismiss. That was granted. The only remain as an apparent agent as a defendant. Our summary judgment motion was granted. And that terminated our involvement in the case at the circuit court level. I mentioned there are some fundamental differences between this case and Porter. In Porter, from the initial complaint, there's an allegation against the hospital providing personnel, including physicians, nurses, and other personnel. And that those individuals were responsible for a failure to report a change in a neurological condition. That's not the case here. The sole focus is on Dr. Poulos. The only allegation of the agency concerns Dr. Poulos. So when we talk about notice, the hospital's only notice is on Dr. Poulos' conduct. That's the only conduct alleged in the complaint. Let me ask you this. So the expert here says that the negligence that the care rendered to Mrs. Simpkins by Dr. Poulos was below the standard of care in that, among others, he failed to remove the Medtronic plate in an emergent manner upon learning that it had been pulled out. Upon learning that it had pulled out. Now, who do you think possibly would have been involved in notifying the physician that this was occurring? Who do you think possibly would be reporting to the doctor about the condition of the patient? Well, Judge, that's a distinct, just so we're clear, so you understand, that's not conduct at the ICU. So what he's talking about, the certificate of merit, that was all conduct that occurred prior to the ICU care. So when... That it pulled out and was compressing and angulating the aorta? Absolutely. So you're going to tell me it wasn't angulating the aorta in the ICU? No, because it was removed in the ICU, Judge. What we have here, and again, Plaintiff's initial complaint is talking about whether or not the revision surgery should have been performed emergently or electively. So what Plaintiff's alleged initially is that because it was an elective procedure, it allowed the plane to continue to press against the aorta. They alleged that that caused the aortic dissection, which ultimately it was responsible for, which ultimately caused the need for the emergency surgery down the road. So, but that's distinct from the ICU treatment. The ICU treatment occurs after the revision surgery occurs. So that's why we're taking a position with this court that this is a completely different set of treatments. Well, the original complaint alleges the May 13th surgery. It alleges the May 14th she underwent emergency surgery. On those two dates, she's in the intensive care unit, correct? On those dates, she is, Judge, that is correct. That's the original complaint? That's the original complaint, but that's not the allegation that negligence, Judge. Okay. Yeah, the allegation of negligence is, and I'll quote here, failing to recommend emergency surgery upon learning that the neptronic plate was not properly attached. Well, what do you think that, first of all, the Account 1 incorporates all the prior paragraphs. Understood. And so it incorporates what I just read to you, and then it says that he failed to act as a reasonably imprudent surgeon by failing to recommend emergency surgery upon learning that the neptronic plate was not properly attached. So now somebody's got to be reporting. I mean, the old question is, well, the nurses are your 24-hour eyes, right? Yes, Your Honor. And that's exactly what happened here, isn't it? Your Honor, can I conclude my response here? Go ahead. Learned that there's been no allegation that, with respect, that there was any delay in a nurse informing Dr. Poulos or anyone in the hospital of failing to inform Dr. Poulos kindly of the neptronic plate not being properly attached. That's an issue the state comes to. Well, no, I mean, that's something that arises out of a variation in symptoms that are being monitored by the ICU nurses. That's what they're supposed to do. Obviously, if something is pressing on your aorta, I would expect the vital signs to change somehow. I don't know. I haven't read the records, but it just seems as a logical part of this. And I'll ask Mr. Schmieder, but is that what happened, is that somebody is saying that the nurses didn't do their job? Absolutely not, Judge. When we're in the ICU, when our nurses' treatment is an issue, that the revision surgery has been performed, plates removed. All this conduct alleged in the Certificate of Merit happened before the ICU treatment. This is a course of the months leading up to the revision surgery, and the initial allegation is that that revision surgery, the reason she didn't get to the ICU in the first place, should have been performed earlier. Plaintiffs alleged that initially that if that revision surgery had been performed an earlier date, she wouldn't have had a dissection because they alleged that it was a failure for the doctor to intervene earlier that caused the aorta to be averted by dissection. So with that, Your Honor, I ask that Judge Locono's order of assistance claim be affirmed. Thank you. Thank you, Counsel. Counsel? Thank you. I think I, after having heard the argument, just confirmed once again my whole point, which is where was the evidence that Judy and Bob knew or should have known before May 5th, 2013, that the ICU nurses' care was an issue? He didn't answer that. All he said was the moment you file a lawsuit, you're on notice, and you have to file every single possible claim that you can possibly think of. That's what he said. We know that based upon the Moon case, it is confirmed that that's not true. The other thing I would like to point out is, and I think this is a critical distinction here, Horner makes it very clear that when you look at the original complaint and you look at the underlying facts, you're looking at the facts, the general fact situation, not at the claims. They actually addressed this in that opinion, and they said in that case, it seems to us the hospital's argument ignores the throwout of language in Section 2-616B, as well as the additional proviso that Relation Back may be appropriate, quote, even though the original claim failed to allege the performance of some act or the existence of some fact. Mrs. Schmader? Yes. Maybe I'm confused here. Okay, so what are you alleging that the nurses did wrong if the surgery had already been performed? I see there's no, according to your expert, what you're claiming, but what was their negligence? What happened in the ICU during that time, her condition deteriorated, caused further delay. Delay in what? That had been caused by the plate rubbing against it. I mean, it was a continuous process. That's why you're down the right road. Yes, it's the whole process. That's why trying to put a dividing line in there, it just doesn't make sense. And so that's what I would say. The other thing I would say, excuse me, talking about Porter, when you look at the complaint in paragraphs 34 and 38, you make it clear that you can violate the respondent's discovery, that we're looking for other additional people to figure out what happened here. And then the last thought I would leave, and I made this in my brief, which is this. How in the world am I supposed to, are my clients supposed to be on notice at an imaginary date, yet somehow the defendant, whose employees created these records, they're not on notice? 2616 actually shifts the notice provision over to the defendants. As the court said, 2616 is a notice in and of itself that additional claims will be asserted that grow out of that occurrence. And so it just doesn't make sense that somehow the burden shifts to the plaintiff, but when an original defendant who has the same information, they can say, well, no, we didn't know because the claim wasn't very specific. Well, that argument's been rejected by the Supreme Court. It's the general facts situation. And as you can tell, May 13th and May 14th appear in the original complaint and all the other discovery in my statements to them, which are uncontroverted. Again, uncontroverted that they weren't told, you've got other issues, and then we went through this whole cycle of delays getting these depositions. So for all those reasons, that's what this court reversed judgment and allowed you to pursue this claim. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement. Thank you.